IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| CLIFFORD MAURICE HERRINGTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 107-082 |
| | ) |
| DAVID FRAZIER, Warden, | ) |
| | ) |
| Respondent. | ) |

**O R D E R**

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. The Magistrate Judge recommended granting Respondent's motion to dismiss the petition as untimely. Although, Petitioner asserted that he is entitled to equitable tolling based on actions of the Clerk of the Supreme Court of Georgia, the Magistrate Judge concluded that Petitioner was not entitled to the benefit of statutory or equitable tolling.

In his objections, Petitioner again argues that he is entitled to the benefit of equitable tolling and claims that he "possess three verifiable sources that can prove beyond all reasonable doubt, that Petitioner never received any incoming mail from the Georgia Supreme Court during the time period in which the clerk maintains she mailed Petitioner a copy of the March 27, 2006, Order denying his motion for reconsideration." (Doc. no. 11, p. 2). However, as explained in the Report and Recommendation, Petitioner's argument is

irrelevant to the issue of equitable tolling. Petitioner argues that the Clerk of the Supreme Court of Georgia was to blame for not providing him with the order on the motion for reconsideration of the denial of his application for a certificate of probable cause to appeal the denial of state habeas relief - the decision that triggered the clock for filing his federal petition. However, there is no evidence that Petitioner was prevented from seeking information himself from the clerk about his case or that he exercised due diligence to ascertain the status of his motion, even as his limited window for filing his federal habeas petition was closing.[1]

Petitioner also asserts that because his "situation [] is factually and legally identical to the situation presented in Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002) [(*per curiam*)]," he similarly, is entitled to equitable tolling. (Doc. no. 11, pp. 4, 5). In Knight the Eleventh Circuit concluded:

> We should note that not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. In this case Knight was assured that the court would contact him, then demonstrated diligence in pursuing information when it did not do so. These facts show that Knight is entitled to equitable tolling until March 4, 1998, the day he received notice of the final denial fo the Georgia Supreme Court.

Id. at 711. Contrary to Petitioner's assertions, the facts of his case are distinguishable from the facts in Knight. The petitioner in Knight specifically asked the clerk of the court for the

---

[1]As explained in the R&R, over seven months of the one-year statue of limitations expired between the time Petitioner's convictions were affirmed on direct appeal on March 29, 2000, and the time Petitioner filed his state habeas petition on November 20, 2000. (Doc. no. 9, pp. 2, 5). Thus, upon conclusion of the state habeas proceedings, Petitioner had just over four months left to file for federal habeas relief; waiting over one year before inquiring as to the status of his motion for reconsideration does not show Petitioner used due diligence.

2

Supreme Court of Georgia when he could expect a ruling on his application for discretionary review. Id. at 710. Based on petitioner's request, he was then assured that he would be notified as soon as a decision was issued. Id. Thus, the Eleventh Circuit concluded that based on the assurance from the clerk and the pursuit of information when the promised notification was not forthcoming, the petitioner in Knight had demonstrated due diligence.

Here, although Petitioner asserts in his objections that he received a form letter from the Clerk of the Supreme Court of Georgia stating that "when a decision is made [on his certificate for probable cause], we will contact you," (doc. no. 11, p. 4), the record does not reflect any such notice.[2] In addition, although Petitioner's response to Respondent's motion to dismiss provides:

> It is extremely important to note that the Georgia Supreme Court's docketing notice for the petitioner's application for a Certificate of Probable Cause specifically states, thusly: "When your application is ruled on, you will be notified immediately." (See, Respondent's Exhibit 13).

(Doc. no. 7, p. 3); a review of Respondent's Exhibit 13 reveals no such notice. Rather, the Exhibit provides:

> Case No. S05H1572
> CLIFFORD HERRINGTON v. PAUL THOMPSON, WARDEN
> The above styled Application For Certificate of Probable Cause to appeal the denial of habeas corpus has been docketed in the Supreme Court today and assigned the case number shown above.

(Doc. no. 8, Ex. 13). Thus, it appears that at best, Petitioner may have received a form letter regarding his application for a certificate of probable cause to appeal, but it is the ruling on

---

[2]Notably, Petitioner simply asserts that he received a form letter from the Clerk of the Supreme Court of Georgia regarding the certificate of probable cause; he does not argue that the letter was sent as a result of a particular inquiry by him as to the status of his motion for reconsideration.

3

the motion for reconsideration of the denial of the certificate of probable cause that is key. Petitioner does not assert that he received any assurance with regards to his motion for reconsideration.

Moreover, even though Petitioner had just over four months left in his one-year statute of limitations, see footnote 1, supra, Petitioner did not actively inquire about the status of his motion for reconsideration until approximately one year after the order denying his motion for reconsideration had been entered. Also, unlike the petitioner in Knight who received personal assurance for the clerk of court that he would be notified when the decision was made, Petitioner here waited approximately one year before inquiring as to the status of his motion for reconsideration without any such personal assurance. Accordingly, contrary to Petitioner's assertion, the facts of his case are not identical to the situation presented in Knight.

The facts in the present case are actually more similar to those in Drew v. Department of Corrections, 297 F.3d 1278 (11th Cir. 2002). Similar to the case at bar, the petitioner in Drew asserted he was entitled to equitable tolling because of the failure of the clerk of court to send him the order dismissing his first habeas petition. Id. at 1287. The Eleventh Circuit ruled that petitioner was not entitled to equitable tolling because the petitioner had provided no evidence supporting his claim that he repeatedly attempted to ascertain the status of his case. Id. at 1288; see also Williams v. Florida, 221 Fed. Appx. 867, 870 (11th Cir. Mar. 21, 2007) (concluding petitioner was not entitled to equitable tolling because unlike petitioner in Knight, he did not receive a personal assurance that he would be contacted at the conclusion of his case). Petitioner has not shown due diligence in ascertaining the

4

information himself, as he waited over one year before inquiring as to the status of his motion for reconsideration. Nor did he receive any personal assurance that he would be contacted by the Clerk of the Supreme Court of Georgia regarding a ruling or his motion for reconsideration. Therefore, Petitioner has not satisfied the requirements for equitable tolling.

Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court. Therefore, Respondent's motion to dismiss is **GRANTED**, this petition is **DISMISSED**, and a final judgment shall be **ENTERED** in favor of Respondent.

SO ORDERED this 3 day of March [February], 2008, at Augusta, Georgia.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE